**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
THE TRAVELERS INDEMNITY
COMPANY OF AMERICA,

                                    Plaintiff,                    **ORDER**

                    -against-                          **23-CV-4567 (JW)**

SOUTHWEST MARINE & GENERAL
INSURANCE COMPANY,

                                    Defendant.
-----------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

On May 31, 2023, Plaintiff The Travelers Indemnity Company of America ("Travelers"), commenced this action against Defendant Southwest Marine & General Insurance Company ("Southwest Marine"). Dkt. No. 1. Plaintiff Travelers' complaint (the "Complaint") seeks a declaratory judgement from this Court that Defendant Southwest Marine is obligated to defend TDX Construction Corporation ("TDX") in a state court action and reimbursement of costs incurred by Plaintiff Travelers for defending TDX in that action. Id. On July 17, 2023, Defendant Southwest Marine filed it answer to the Complaint. Dkt. No. 13.

On April 19, 2024, Plaintiff Travelers filed a motion for summary judgement. Dkt. Nos. 29–33. Shortly thereafter, Defendant Southwest Marine opposed the motion for summary judgment and separately sought leave to file a counterclaim. Dkt. Nos. 34, 38. The Court determines each in turn.

## I.    BACKGROUND

The following facts are taken from Plaintiff Travelers' Rule 56.1 statement of material facts ("Pl. 56.1") (Dkt. No. 32), Defendant Southwest Marine's counter Rule 56.1 statement ("Def. 56.1") (Dkt. No. 39), Plaintiff Travelers' counter to Defendant Southwest Marine's Rule 56.1 statement ("Pl. Counter 56.1") (Dkt. No. 41), and the admissible evidence submitted by the Parties.

### A. The Construction-related Group's Connection to Each Other

The New York City Housing Authority ("NYCHA") entered into a contract with TDX entitled "Agreement for Construction Management as Agent Services in Connection with Various Project(s)," dated October 29, 2012 (the "NYCHA/TDX Contract"). Pl. 56.1 at ¶ 10. The first page of the NYCHA/TDX Contract states that "TDX is an independent contractor[] (not an agent)." Dkt. No. 31-1 at 1; Def. 56.1 at ¶ 26. The NYCHA/TDX Contract then states that NYCHA is "to retain one or more construction management firms 'as agent' to provide … various pre-construction, construction[,] and post-construction services (collectively, the Services)" for various NYCHA projects over a three-year term. Dkt. No. 31-1 at 1; Pl. 56.1 at ¶ 10. The NYCHA/TDX Contract goes on to provide in relevant part that, when performing "the Services, [TDX] will have the status of an independent contractor without the power to act as agent for, or otherwise bind NYCHA without NYCHA's written consent, except to the extent set forth within this Agreement." Dkt. No. 31-1 at 8; Pl. 56.1 at ¶ 10.

On February 20, 2015, Roma Scaffolding Inc. ("Roma") submitted a proposal in response to NYCHA's bid invitation for a contract entitled "Requirement Contract for Exterior Restoration at Various Developments." Pl. 56.1 at ¶ 12. On April 15, 2015, Roma was awarded the contract (the "NYCHA/Roma Contract"). Id. at ¶ 13. The NYCHA/Roma Contract provides that, amongst other things, "NYCHA Special Conditions" were made a part of the NYCHA/Roma Contract. Id. at ¶ 14.

NYCHA Special Conditions provides in relevant part that contractors shall maintain insurance, including general liability for bodily injury, and "[a]ll insurance policies providing coverage to the Authority, its members, employees, agents, investors, partners and/or representatives under this Contract shall be primary to any other insurance policies providing coverage to these entitles…." Pl. 56.1 at ¶ 14. It also provides that all policies, except for professional liability and statutory workers compensations, shall "…name the Authority and its members, employees, agents, investors, partners and/or representatives as an Additional Insured…." Id. Included later, the NYCHA Special Conditions state that the contractor shall name the construction management firm as an additional insured. Id.

## B. The Parties and their Coverage of the Construction-related Groups

Defendant Southwest Marine issued to Roma a general commercial liability policy, subject to terms and conditions, covering bodily injury caused by an accident during the period of February 10, 2017 to February 10, 2018 (the "SWM/Roma Policy"). Pl. 56.1 at ¶¶ 4–5. The SWM/Roma Policy provides, in relevant part, that additional insured listed are covered with respect to bodily injury caused in whole or

in part by the acts of Roma, or those acting on Roma's behalf, "… in in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above." Id. at ¶ 6. The SWM/Roma Policy's "other insurance" section includes, in relevant part, that it will only be excess in five specific circumstances. Id. at ¶ 9. An endorsement to the SWM/Roma Policy includes, in relevant part, it will remain primary and "… will not seek contribution from any other insurance available to an additional insured under your policy" where:

> (1) The additional insured is a Named Insured under such other insurance; and
> (2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Id.

In accordance with the NYCHA Special Conditions, "Roma produced a Certificate of Liability Insurance to NYCHA, identifying the [SWM/Roma Policy] as Roma's general liability insurance…" and listed TDX as an additional insured. Pl. 56.1 at ¶ 17.

Plaintiff Travelers issued to TDX a commercial insurance policy, subject to terms and conditions, covering bodily injury caused by an accident during the period between February 1, 2017 to February 1, 2018 (the "Travelers/TDX Policy"). Pl. 56.1 at ¶¶ 1–2. The Travelers/TDX Policy contains "other insurance" provisions providing that coverage under the Travelers/TDX Policy is excess over "any of the other insurance, whether primary, excess, contingent or on any other basis, that is

available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." Id. at ¶ 3.[1]

### C. The Scaffolding/ Sidewalk Shed

On July 6, 2015, under the NYCHA/Roma Contract, NYCHA issued a notice to Roma to commence work at the "Morris I & II" development. Pl. 56.1 at ¶ 18. On or about February 2016, Roma installed a sidewalk shed that covers the external staircase between 1481 and 1465 Washington Avenue. Dkt. No. 37-1 at 16–17; see also Pl. 56.1 at ¶ 19; Dkt. No. 38 at 14. The installation of the sidewalk shed was overseen by TDX. Def. 56.1 at ¶ 17.[2]

The external staircase between 1481 and 1465 Washington Avenue had steps "… that are always broken." Def. 56.1 at ¶ 18.[3] TDX "reserved unto itself the duty to keep and maintain the aforesaid premises and its surrounding paths, walkways and stairways in a safe and proper fashion so that no persons lawfully thereat would

---

[1] Defendant Southwest Marine improperly denied this fact in stating it "is not an accurate characterization of the coverage afforded by Travelers to TDX." Def. 56.1 at ¶ 3. And stating Plaintiff "Travelers has an independent obligation to provide primary coverage to TDX as to liability claims that fall outside of Roma's scope of work." Id. Rule 56(c) provides that a party asserting a fact is genuinely disputed must cite to specific materials in the record or showing materials in the record do not support the asserted fact. Fed. R. Civ. P. 56(c); see also Local Rule 56.1(d). Defendant's denial of this fact fails to do so. Rule 56(e) provides that when a party fails to properly address another party's assertion of fact, amongst other things, the Court may consider the fact undisputed for purposes of deciding summary judgment. Fed. R. Civ. P. 56(e). Thus, the Court considers the fact undisputed.

[2] Plaintiff denied this fact to the extent it was not a "separate, short and concise statement[s] of additional material facts" required by Local Rule 56.1(b). However, this Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Santander Consumer USA, Inc. v. City of Yonkers, No. 22-CV-8870 (KMK), 2024 WL 4817649, at *1 n.2 (S.D.N.Y. Nov. 18, 2024) (citing Commerzbank AG v. U.S. Bank, N.A., 100 F.4th 362, 377 (2d Cir. 2024)).

[3] Plaintiff again denied this fact to the extent it fails Local Rule 56.1. While Defendant lists out several questions from a deposition, the Court again excuses any failure to make the relevant fact separate, short, and concise. See Section I(C) n.2 at Page 5.

be caused to sustain serious injuries" and had a duty to "maintain the aforesaid premises in a reasonably safe and suitable condition and in good repair."  Def. 56.1 at ¶¶ 11–12.[4]

### D. The Underlying Incident and Lawsuit

A woman (the "Claimant") "alleges she was injured on February 27, 2017, when she was caused to trip and fall as she descended exterior stairs between the Morris Houses located at 1481 Washington Avenue and 1465 Washington Avenue in Bronx, New York."  Pl. 56.1 at ¶ 20.  On October 26, 2017, the Claimant filed a lawsuit against "NYCHA, Roma, TDX, Sharan Builders, Inc., and Neelam Construction Corporation in the Supreme Court of the State of New York, County of Bronx" (the "Underlying Action") seeking damages from the alleged accident.  Dkt. No. 30-7; see also Figueroa v. NYCHA, et al., Index No. 30150/2017E.

The Claimant, in the Underlying Action, alleges that "… she was caused to trip and fall, due to damaged, worn, and broken stair and her inability to be able to hold on to the handrail because of ongoing construction on the stairs."  Pl. 56.1 at ¶ 22.  As of the date of this Order, liability in the Underlying Action has not been determined.[5]

### E. Tenders for Defense of the Underlying Action

On June 16, 2017, NYCHA demanded that Roma defend and indemnify NYCHA in connection with the claims of the Underlying Action.  Pl. 56.1 at ¶ 29.  On

---

[4] Plaintiff admits these facts only to the extent the complaint in the Underlying Action alleges them. Pl. Counter 56.1.  However, Plaintiff fails to properly deny these facts to any remaining extent under Rule 56.  Thus, the Court considers them undisputed.  See supra Section I(B) n.1 at Page 5.

[5] The docket of Figueroa v. NYCHA, et al., Index No. 30150/2017E evinces that the case has not progressed since the notification to that court that the Claimant unfortunately passed away.

February 23, 2018, Defendant Southwest Marine, as the insurer of Roma, accepted the tender to defend NYCHA. Id. at ¶ 31.

On June 30, 2017, Plaintiff Travelers demanded that Defendant Southwest Marine defend and indemnify TDX as an additional insured in connection with the claims of the Underlying Action. Pl. 56.1 at ¶ 30. On April 23, 2018, Plaintiff Travelers retendered their demand. Id. at ¶ 32. On October 12, 2022, Defendant Southwest Marine denied Plaintiff Travelers' tender. Id. at ¶ 33.

Without contribution from Defendant Southwest Marine, Plaintiff Travelers has been providing a defense to TDX in connection with the Underlying Action and as of the Rule 56.1 statement, incurred approximately $48,594.40 in costs. Pl. 56.1 at ¶¶ 34–37.

## II.    LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66, 72 (2d Cir. 2022) (citation and quotation marks omitted). "In determining whether there are genuine disputes of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in

7

favor of the party against whom summary judgment is sought." <u>Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.</u>, 64 F.4th 441, 445 (2d Cir. 2023) (citation and quotation marks omitted).

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." <u>Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.</u>, 650 F. App'x 70, 71 (2d Cir. 2016) (summary order) (quoting <u>In re Estates of Covert</u>, 97 N.Y.2d 68, 76, 735 N.Y.S.2d 879, 761 N.E.2d 571 (2001). "Under New York law, the interpretation of a contract 'is a matter of law for the court to decide.'" <u>Id.</u> (quoting <u>Int'l Multifoods Corp. v. Commercial Union Ins. Co.</u>, 309 F.3d 76, 83 (2d Cir. 2002). Unambiguous terms or provisions are given their plain meaning, and where ambiguity is found, it is construed in favor of the insured against the insurer. <u>See</u> <u>Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.</u>, 685 F. Supp. 3d 187, 200 (S.D.N.Y. 2023). However, "[a]mbiguity is not to be found solely because the Parties urge different interpretations of the Policy." <u>Porco v. Lexington Ins. Co.</u>, 679 F. Supp. 2d 432, 436 (S.D.N.Y. 2009) (citing <u>Metro. Life Ins. Co. v. RJR Nabisco, Inc.</u>, 906 F.2d 884, 889 (2d Cir.1990)).

### B. Choice of Law

While the Parties' briefs do not include any analysis on choice of law, their briefs overwhelmingly cite to New York law. Such implied consent is sufficient to establish the applicable choice of law. Thus, this Court applies New York law. <u>See</u> <u>Travelers Indem. Co. v. Trisura Specialty Ins. Co.</u>, No. 22-CV-9900 (LGS), 2024 WL

2882202, at \*2 (S.D.N.Y. June 7, 2024) (citing <u>In re Snyder</u>, 939 F.3d 92, 100 n.2 (2d Cir. 2019) and <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000)).

### C. The Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy." <u>Admiral Ins. Co. v. Niagara Transformer Corp.</u>, 57 F.4th 85, 92 (2d Cir. 2023) (quoting <u>United States v. Doherty</u>, 786 F.2d 491, 498 (2d Cir. 1986)). "The Supreme Court has explained that the phrase case of actual controversy in the DJA refers to the same type of Cases and Controversies that are justiciable under Article III." <u>Id.</u> (cleaned up). The DJA does not expand subject matter jurisdiction but applies the equivalent prerequisite analysis. <u>Id.</u> Moreover, even in diversity actions, federal law determines the justiciability of declaratory judgment. <u>Stoncor Grp., Inc. v. Peerless Ins. Co.</u>, 322 F. Supp. 3d 505, 512 (S.D.N.Y. 2018).

"The critical question is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Admiral Ins. Co.</u>, 57 F.4th at 92 (cleaned up) (citing <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)). "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory[-]judgment action. Rather, courts should focus on the practical likelihood that the [relevant] contingencies will occur." <u>Id.</u> (internal quotations omitted) (citing Emps. Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271,

278 (2d Cir. 2008)).  "Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real."  E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, 241 F.3d 154, 177 (2d Cir. 2001).

## III.   DISCUSSION

Plaintiff Travelers' motion for summary judgment seeks an order from this Court "declaring that: (a) Southwest Marine has a duty to defend TDX in connection with the Underlying Action; (b) Southwest Marine's coverage obligations to TDX in connection with the Underlying Action are primary; and (c) Travelers' coverage obligations are excess to those of Southwest Marine with respect to the Underlying Action;" and reimbursement of the cost Plaintiff Travelers has incurred defending TDX in the Underlying Action.  Dkt. No. 33.

Defendant Southwest Marine's basis for arguments in opposition include: possible disputed material facts; ripeness; policy language; and equitable allocation as a remedy.  Dkt. No. 38.

The Court addresses each of the requests for summary judgment and the relevant opposition in turn, beginning with the possible disputed material facts.

### A. Defendants Argument on Possible Disputed Material Facts

i.   NYCHA/TDX vs NYCHA Roma Contract Terms

Defendant Southwest Marine asserts that Plaintiff Travelers' "entire claim for relief rests on the assertion that the contract between Roma and NYCHA requires Southwest to insure TDX as an additional insured." Dkt. No. 38 at 2.  Defendant

Southwest Marine then asserts that, prior to the NYCHA/Roma Contract, NYCHA denied a request by TDX for inclusion in contractor agreements, such as Roma's, that would extend Southwest Marine's insurance coverage of Roma to TDX.  Id. at 3. Instead, NYCHA said it "would require a 'GC' to provide such coverage and nothing in the record of this case defines "GC."  Id.  Thus, arguing the inconsistencies in the two contracts is a disputed material fact precluding summary judgement.  Id.

Plaintiff Travelers asserts that the NYCHA/Roma Contract required Roma to name the construction management firm, TDX, as an additional insured to Roma's Commercial General Liability insurance policy and Roma did so when it extended coverage to "[a]ll entities required by written contract" in the SWM/Roma Policy.  Dkt. No. 40 at 4.  Plaintiff Travelers then argues that it defies logic that the prior NYCHA/TDX Contract would contradict the NYCHA/Roma Contract's requirement to insure TDX under the SWM/Roma Policy.  Id.

Defendant Southwest Marine contradictorily argues that the NYCHA/TDX Contract rejected insurance coverage for TDX in "agreements (such as Roma's)" by at the same time stating Roma "was a contractor for a limited scope of work; i.e. there is no contention that Roma was the GC."  Dkt. No. 38 at 3.  Thus, concluding themselves that any rejection from NYCHA was in fact not for agreements such as Roma's.

Moreover, even if the language surrounding GC's in the NYCHA/TDX Contract is a genuine dispute—is not a material dispute precluding summary judgment. Defendant Southwest Marine did not deny the Rule 56.1 statement that the

NYCHA/Roma Contract, under the Special Conditions, required "the Contractor" to list the construction manager as an additional insured. Dkt. No. 39 at ¶ 16. Defendant Southwest Marine also produced to NYCHA a certificate of liability insurance expressly listing TDX as an additional insured. Id. at ¶ 17. Thus, it is not disputed that TDX was a named additional insured.

    ii.    <u>Defendant's Argument that Roma did not Perform Work for TDX</u>

Defendant Southwest Marine also argues that the SWM/Roma Policy provides coverage for "your acts or omissions in the performance of your ongoing operations for the additional insured …" and Roma was working for NYCHA not TDX. Dkt. No. 38 at 3. Defendants assert that TDX's role as a supervisor does not establish that Roma performed work for TDX. Id.

Plaintiff Travelers argues that "New York Courts interpreting endorsement language identical to that found in the Southwest Marine Policy have held that this endorsement language does not mandate that the additional insured be in privity of contract with the named insured." Dkt. No. 40 at 7 (citing <u>Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.</u>, 685 F.Supp.3d 187, 202-6 (S.D.N.Y. 2023)). Thus, arguing that Roma performed work for TDX as the manager of Roma's work. <u>Id.</u>

The Court agrees with Plaintiff Travelers. In <u>Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.</u>, that Court found that language such as "any person or organization for whom [the named insured is] performing operations" is not a privity requirement. 685 F.Supp.3d at 205. Rather, that Court found that a

12

supervisor or manager overseeing an operation, who is also an ultimate beneficiary of work done, is uncontroverted evidence supporting an inference that such supervisor was in partial control and work performed is thus for the supervisor.  Id. Here, both Parties agree that TDX was the construction manager and supervised Roma's work.  Dkt. No. 39 at 3; Dkt. No. 40 at 7.  Consequently, this Court finds that work done by Roma for NYCHA at the location in question, and supervised by TDX, was also done for TDX.

For the reasons explained above, Plaintiff Travelers has also met its burden in establishing no dispute of a material fact exist regarding who Roma performed work for under the SWM/Roma Policy.

**B. Duty to Defend**

To begin this Court finds that disputes regarding the Parties' duty to defend are ripe as the defense in the Underlying Action has already begun making them "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." See Admiral Ins. Co., 57 F.4th at 92.

"In New York, an insurer's duty to defend is exceedingly broad, and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage."  Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co., 955 F.3d 305, 310 (2d Cir.), certified question accepted, 35 N.Y.3d 962, 147 N.E.3d 1160 (2020), and certified question withdrawn, 37 N.Y.3d 969, 171 N.E.3d 762 (2021) (cleaned up) (applying New York law)).  As a

13

result, "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." Id.

"Put another way, [a] defendant has no obligation to defend only if it can be concluded as a matter of law that there is no possible factual or legal basis on which [the] defendant might eventually be held to be obligated to indemnify plaintiff under any provision of the insurance policies." Id. (quoting Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co. of Newark, N.J., 86 A.D.2d 736, 446 N.Y.S.2d 599, 600 (N.Y. App. Div. 1982), aff'd 57 N.Y.2d 656, 454 N.Y.S.2d 74, 439 N.E.2d 883 (1982)). "[T]he standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense." BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 715, 871 N.E.2d 1128, 1132 (2007).

Defendant Southwest Marine asserts two arguments in their opposition to the motion for summary judgment regarding whether a reasonable possibility of coverage exists. First, Defendant Southwest Marine asserts that the Claimant's testimony establishes no reasonable possibility of coverage and the complaint in the Underlying Action is an unclear "hodgepodge of allegations that defy reasonable interpretation." Dkt. No. 38 at 5–12. Second, Defendant Southwest Marine argues that no evidence exists that Roma failed to perform its sidewalk shed obligations and no action by Roma created or exacerbated a dangerous condition. Id. at 12–14.

14

i.  The Claimant's Testimony and the Complaint in the Underlying Action

Defendant Southwest Marine, citing to a select few allegations, argues that the complaint in the Underlying Action lacks the clarity needed for this Court to find a reasonable possibility of coverage within its four corners.  Dkt. No. 38 at 5–8.

Plaintiff Travelers counters that Defendant Southwest Marine's argument is "disingenuous" because "the very 'hodgepodge of allegations' that Southwest Marine now contends are just too indecipherable to determine whether a duty to defend is owed to TDX were, at some point, clear enough to warrant Southwest Marine's assumption of NYCHA's defense."  Dkt. No. 40 at 2–3.  Moreover, Plaintiff Travelers asserts that "the Underlying Action alleges that Roma's negligence brought about Claimant's bodily injuries" and that alone, no matter how false or baseless, is enough to fall in the scope of coverage triggering the duty to defend.  Id. at 3 (citing Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d Cir. 2006)).

"In determining whether a duty to defend exists, courts are to 'compare the allegations of the complaint to the terms of the policy.'" Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d Cir. 2006) (quoting A. Meyers & Sons Corp. v. Zurich Am. Ins. Group, 74 N.Y.2d 298, 302, 546 N.Y.S.2d 818, 820, 545 N.E.2d 1206 (1989)). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." Id. (quoting Colon v. Aetna Life & Cas. Inc. Co., 66 N.Y.2d at 8–9, 494 N.Y.S.2d at 689, 484 N.E.2d 1040(1985)).

15

Here, the SWM/Roma Policy covers TDX, as an additional insured, with respect to bodily injury caused in whole or in part by Roma, when Roma is in the performance of an act for TDX. Pl. 56.1 at ¶ 6. The complaint in the Underlying Action alleges that the defendants—including Roma—were negligent in, amongst other things, installing the sidewalk shed and maintaining a safe condition at the location in question. Dkt. No. 30-7 at 16–17 (the Underlying Action's complaint). Even when viewing the complaint in the light most favorable to Defendant Southwest Marine, it clearly alleges Roma, to some degree, was responsible for the conditions or circumstances causing the Claimant's fall. Therefore, this Court finds that Defendants Southwest's duty to defend Roma was triggered, and as a result, its duty to defend TDX was also triggered.

Defendant Southwest Marine also asks this Court to consider the depositions of representatives for NYCHA and TDX, and of the Claimant when evaluating whether the duty to defend extends to TDX. Dkt. No. 38 at 8–12. That request is impermissible.

"While the New York Court of Appeals has eschewed wooden application of the four corners of the complaint rule, the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case." Travelers Indem. Co. v. Harleysville Ins. Co., 694 F. Supp. 3d 235, 245 (E.D.N.Y. 2023) (cleaned up) (collecting cases).

The extrinsic evidence (*i.e.,* the deposition testimony) Defendant Southwest Marine asks this Court to rely on does not just overlap with the facts at issue in the Underlying Action—they are possibly some of the most critical facts to be considered

in the Underlying action.  Therefore, the Court declines to rely on such extrinsic evidence.

    ii.   <u>Defendant's Arguments on Liability as a Matter of Law</u>

Defendant Southwest Marine argues, as a matter of law, that the underlying Complaint cannot establish liability against Roma.  Dkt. No. 38 at 12–13.  Defendant Southwest Marine goes on to present arguments on the merits of the Underlying Action sounding in liability as to why the Roma did not act negligently.  <u>Id.</u> at 13–17.

Plaintiff Travelers asks this Court to disregard Defendant Southwest Marine's attempt to argue the merits because the duty to defend does not depend on an underlying judicial determination of liability.  Dkt. No. 40 at 5.

First, the Court notes that Defendant Southwest Marine, again, relies on impermissible extrinsic evidence in making its arguments.   Second, Defendant Southwest Marine actually argues that the weight of the facts, or lack thereof, excuses Roma of liability.  <u>See e.g.</u>, Dkt. No. 38 at 14 ("Moreover, as Claimant's testimony demonstrates, 'it was the hole' that caused her accident.") This Court's job is not to determine, based on the weight of the facts, whether Roma is liable in the underlying claim.  Rather to determine if "as a matter of law that there is no possible factual or legal basis" that may lead to later triggering the duty to indemnify under the relevant policies.  <u>See</u> <u>Mary & Alice Ford Nursing Home Co.</u>, 446 N.Y.S.2d at  600. This Court cannot determine that, in this matter, no possible factual or legal basis could later lead to triggering the duty to indemnify under the SWM/Roma Policy.

For the reasons discussed above, Plaintiff Travelers' motion for summary judgment on whether Defendant Southwest Marine owes a duty to defend TDX is **GRANTED.**

### C. Priority of Coverage and Equitable Allocation

Plaintiff Travelers asks this Court to issue a declaratory order that the SWM/Roma Policy, and its coverage to TDX as an additional insured, is primary and non-contributory. Dkt. No. 33 at 14–15; Dkt. No. 40 at 8–10. In doing so, Plaintiff Travelers argues that the Travelers/TDX Policy is excess to the SWM/Roma Policy. Dkt. No. 33 at 14–15.

Defendant Southwest Marine argues that should this Court find TDX is covered as an additional insured, such coverage should only apply to conduct for which Roma is found liable. Dkt. No. 39 at 22. Defendant Southwest Marine then argues that if the facts suggest TDX and Roma could both be found independently liable, an equitable allocation should be applied. Id. at 24–26.

First, any determination of independent coverage contingent upon an ultimate finding of liability in the Underlying Action is not ripe for the Court to decide. Second, this Court cannot rule on any arguments regarding priority of overlapping coverage.

"In order to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue[.]" Travelers Prop. Cas. Co. of Am., 685 F. Supp. 3d at 213 (quoting BP Air Conditioning Corp., 8 N.Y.3d at 716, 840 N.Y.S.2d 302, 871 N.E.2d 1128.). The Underlying Action's complaint asserts claims of negligence against other defendants who themselves, or their possible

18

insurance providers, are not parties to this motion.  Furthermore, the Court has not been made aware of the existence, or lack thereof, of those party's insurance policies. Because this Court cannot conclude that it has all the relevant policies, this Court declines to make any determination regarding priority of coverage.  Travelers Prop. Cas. Co. of Am., 685 F. Supp. 3d at 213 (collecting cases).

For the reasons stated above, Plaintiff Travelers' motion for summary judgment regarding priority of the policies is **DENIED.**

### D. Duty to Indemnify

Plaintiff Travelers' motion for summary judgment does move for any judgment on Defendant Southwest Marine's possible duty to indemnify.  Dkt. No. 40 at 3 n.1. Nonetheless, Defendant Southwest Marine argues that Plaintiff Travelers' motion is premature regarding indemnification.  Dkt. No 38 at 4–5.

"A district court may well have jurisdiction to issue a declaratory judgment on an insurer's duty to defend, even while holding that the duty to indemnify is not ripe for adjudication."  Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 93 (2d Cir. 2023) (cleaned up).  Given, there is no motion for summary judgment regarding indemnity before this Court, and such issue would not be ripe until the resolution of the Underlying Action, this Court need not address this issue.  See Travelers Indem. Co. of Am. v. Ohio Sec. Ins. Co., No. 23-CV-3451 (AS), 2024 WL 2115885, at *6 (S.D.N.Y. May 10, 2024); Travelers Prop. Cas. Co. of Am., 685 F. Supp. 3d at 213–16.

### E. Reimbursement of Costs

Lastly, Plaintiff Travelers seeks an award for all sums paid to defend TDX in the Underlying Action as of the date of the motion and an inquest on damages incurred since. Given this Court's finding that Defendant Southwest Marine's duty to defend TDX was triggered, Plaintiff Travelers is entitled to reimbursement of costs incurred to defend TDX. See Section III(B) at page 13–17. Thus, Plaintiff Travelers' motion for summary judgment on costs is **GRANTED**. The Parties are ordered to meet and confer and propose a briefing schedule for an inquest on damages **by April 14, 2025**.

### F. Defendant Southwest Marine's Letter Motion

On May 3, 2024, Defendant Southwest Marine filed a letter motion seeking leave to file a counterclaim for reimbursement of its cost for defending NYCHA in the Underlying Action. Dkt. No. 34. Defendant Southwest Marine represented that the delay in seeking leave was because they previously did not have access to the full NYCHA/TDX Contract and was unaware of its terms. Id. Defendant Southwest Marine claims that it was only when the NYCHA/TDX Contract was included as an attachment to Plaintiff Travelers' motion for summary judgment that they gained access to the full document. Id. Finally, Defendant Southwest Marie asserts it would require no new discovery. Id.

Plaintiff Travelers filed a letter motion in opposition of Defendant Southwest Marine's request for leave. Dkt. No. 35. Plaintiff Travelers asserts that the NYCHA/TDX Contract "was in fact produced to SWM during the course of discovery

20

in this action on October 16, 2023 as part of Travelers' document production."
Plaintiff Travelers also asserts it was identified as produced in their written discovery
responses.  Id.  In support of its argument, Plaintiff Travelers listed the bates number
for the document and attached a dated copy of the written discovery responses that
identify it.  Id.

Plaintiff Travelers also argues that the proposed counterclaim is "only
tenuously related" and would in fact require more discovery.  Dkt. No. 35.  Plaintiff
Travelers argues for all the reasons above, leave should be denied, and Defendant
Southwest Marine should be required to file those claims in a new action.  Id.

Pursuant to Rule 15, a party may amend its pleading either 21 days after
serving it or 21 days after service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1).
"In all other cases, a party may amend its pleading only with the opposing party's
written consent or the court's leave. The court should freely give leave when justice
so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should generally be denied in
instances of futility, undue delay, bad faith or dilatory motive, repeated failure to
cure, or undue prejudice.  See United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16,
28 (2d Cir. 2016).

This Court finds Defendant Southwest Marine's claim that it did not have the
full NYCHA/TDX Contract wholly incredible given Plaintiff Travelers' documented
proof that it was produced and identified on October 16, 2023.  Meaning Defendant
Southwest Marine, to no fault but their own, failed to discover it possessed the
document for six months before seeking leave from this Court.  Thus, Defendants

Southwest Marine's letter motion seeking leave to file a counterclaim is **DENIED** as untimely.

### IV.    CONCLUSION

Plaintiff Travelers' motion for summary judgment with respect to the declarations that Defendant Southwest Marine's duty to defend TDX was triggered, and reimbursement of costs are **GRANTED.**  Plaintiff Travelers' motion for summary judgment for declarations regarding the priority of coverages is **DENIED** without prejudice.  Considering the Courts ruling on Defendant Southwest Marine's duty to defend, the Parties are ordered to meet and confer and discuss possible resolution of this action.  Defendant Southwest Marine's motion for leave to file a counterclaim is **DENIED**.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 29, 34.**

SO ORDERED.

DATED:    New York, New York
          March 31, 2025

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge